IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Criminal No. 23-49 |
| PIERRETTE ETAH EBONGE and ANGWANG AGHARIH-AFOMBE, Defendants. | ) ) ) ) ) ) |

**MEMORANDUM OPINION and ORDER[1]**

Before the Court is defendant Angwang Agharih-Afombe's Motion to Dismiss under Federal Rule of Criminal Procedure 12(b)(3)(A)(ii), alleging preindictment delay.[2] [ECF 51]. The government filed an opposition [ECF 59], and defendant replied [ECF 69].

### I.   Background

The government alleges Afombe illegally entered the United States in violation of 8 U.S.C. § 1325(a)(1). [ECF 1]. According to an affidavit by U.S. Customs and Border Protection ("CBP") Officer Denny Johannes, Afombe and co-defendant Ebonge arrived at the Cyril E. King International Airport on St. Thomas on June 26, 2023, for departure of a flight to the continental United States. [ECF 1-1] ¶ 4. Defendants presented Cameroon passports and were escorted to the secondary inspection area to verify their legal status to be in the United States. *Id.* ¶¶ 4–6. After additional questioning by CBP officers, Afombe stated she left her home country of Cameroon on September 13, 2022, and traveled to Ghana, Nigeria, and Antigua. *Id.* ¶ 8. She entered St. John,

---

[1] The District Court issued an Order designating all matters concerning this case to the undersigned Magistrate Judge. [ECF 57].

[2] Here defendant is charged by information, as permitted in cases in the District Court of the Virgin Islands. 48 U.S.C. § 1561; Fed. R. Crim. P. 1(a)(3)(C). The principles relating to timing under the Rule are the same.

USVI on June 15, 2023, by boat. *Id.* A records check revealed Afombe is a native and citizen of Cameroon, and had no permission to enter the United States. *Id.* ¶ 10.

On June 27, 2023, defendants made their initial appearance on the government's criminal complaint. [ECF 1]. On June 28, 2023, the Court held a detention hearing and released Afombe on bond to a third-party custodian. [ECFs 21, 22]. On July 27, 2023, the government filed an information charging Afombe with one count of illegal entry. [ECF 24]. Afombe filed the instant motion on September 10, 2023. [ECF 51].

Afombe moves to dismiss the case against her with prejudice, contending the government filed the information outside the timelines set by the federal Speedy Trial Act ("STA" or "the Act"). [ECF 52]. Defendant admits that because the charge against her is a class B misdemeanor, it falls outside the category of offenses to which the Act applies. *Id.* ¶ 5. However, she argues "her exclusion from the protections of the Speedy Trial Act violates her rights to equal protection of the laws" and urges the Court to declare the Act's definition of "offense" unconstitutional. *Id.* Defendant further contends the personal freedoms she surrendered under the Bail Reform Act ("BRA")[3] are "[w]ithout question . . . recognized fundamental rights" and require strict scrutiny. *Id.* ¶ 10. And, because there is no compelling government interest to treat the defendant differently than other criminal defendants based on the class of offense, the Court should "declare that the provisions of the Speedy Trial Act apply to her." *Id.* ¶¶ 11–12. Finally, Afombe argues dismissal is mandated because the information was not filed within the Act's 30-day limit, and such dismissal should be with prejudice. ¶¶ 12–15.

In response to defendant's equal protection argument, the government contends rational basis review applies here because the classification at issue does not involve fundamental rights or

---

[3] The restrictions applicable to Afombe are set forth in the Order Setting Conditions of Release. [ECF 20].

discriminate against a suspect class. [ECF 59] at 4. Further, it is defendant's burden to disprove the rationality of the classification. *Id.* at 6. Though Afombe does not argue the statute fails rational basis review, the government contends it "easily passes" this standard. *Id.* The government further argues the STA does not apply to Afombe's case, but even if it did, "the Government filed the information before the Act's 30-day clock expired." *Id.* at 3. According to the government, it filed the information within 30 days of defendant's arrest on formal federal charges. *Id.* at 7. Alternatively, the information was timely because the date of defendant's detention hearing is excluded from the 30-day clock. *Id.* at 8. Finally, even if there was a speedy trial violation, the government urges dismissal without prejudice is the appropriate remedy. *Id.* at 8–9.

In reply, Afombe contends the cases cited in the opposition are inapposite to her constitutional argument and do not support a finding of timeliness. [ECF 69] at 1–4. She further states that the government's lack of counterargument to her claim of protected fundamental interests makes clear that strict scrutiny applies here. *Id.* at 2. Defendant requests that even if the Court does not grant dismissal, the Court should still find the Act applies to her, and contends she "has the right to insist on compliance with the 70-day trial deadline." *Id.* at 5.

## II.    Legal Standards

Under Rule 12 of the Federal Rules of Criminal Procedure, certain defenses must be raised by motion before trial. Defendant here asserts preindictment delay under Rule 12(b)(3)(A)(ii).

**A. Speedy Trial Act**

The Sixth Amendment guarantees to certain criminal defendants "the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI.[4] "Congress enacted the Speedy Trial Act

---

[4] "It is well established that the Sixth Amendment, like the common law, reserves this jury trial right for prosecutions of serious offenses, and that 'there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision.'" *Lewis v. United States*, 518 U.S. 322, 325 (1996) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 1 (1968)).

to 'give effect to the Sixth Amendment right to a speedy trial' by setting specified time limits after arraignment or indictment within which criminal trials must be commenced." *United States v. Brooks*, 697 F.2d 517, 520 (3d Cir. 1982) (citation omitted).[5] By its plain terms, the Act applies to "any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress," but specifically excludes class B and C misdemeanors and infractions. 18 U.S.C. § 3172(2).[6, 7]

Relevant to the instant case, the STA provides that an "information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Certain periods of delay are excludable, including "delay resulting from other proceedings concerning the defendant." 18 U.S.C. § 3161(h). The Act further provides a penalty for noncompliance and requires dismissal of an indictment or information filed outside the proscribed time limit. 18 U.S.C. § 3162. Whether to dismiss with or without prejudice is within the discretion of the court based on a non-exhaustive list of factors. *Id.*

### B. Bail Reform Act

Under the BRA of 1984, a defendant facing charges in a criminal matter must be released pending trial on the least restrictive condition or combination of conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the

---

[5] "The protections of the Act go beyond those secured by the amendment, since the Constitution does not require that a trial commence within a specified time." *Brooks*, 697 F.2d at 520 n.3 (citing *Barker v. Wingo,* 407 U.S. 514 (1972)); *see also Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (noting "the lower courts have generally found postaccusation delay 'presumptively prejudicial' [(as required to trigger Sixth Amendment analysis)] at least as it approaches one year").

[6] The Act also excludes "offense[s] triable by court-martial, military commission, provost court, or other military tribunal." 18 U.S.C. § 3172(2).

[7] For simplicity and purposes of this Order, the Court will refer to these excluded offenses as "petty offenses." *See* 18 U.S.C. § 19 ("the term 'petty offense' means a Class B misdemeanor, a Class C misdemeanor, or an infraction").

community." 18 U.S.C. § 3142(a)–(c). Conditions may include release to a third-party custodian, reporting to a designated law enforcement or pretrial services agency, refraining from using controlled substances, and restrictions on personal associations, place of abode, or travel, among others. 18 U.S.C. § 3142(c)(1)(B). Under certain circumstances, a defendant may be detained if the court finds there is no condition or combination of conditions of release that will assure the defendant's appearance at future proceedings or the safety of the community pending those proceedings. 18 U.S.C. § 3142(e)–(f).[8] "The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes . . . [and] operates only on individuals who have been arrested for a specific category of extremely serious offenses." *United States v. Salerno*, 481 U.S. 739, 747, 750 (1987).

### C. Equal Protection

The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Supreme Court has observed that, unlike the Fourteenth Amendment, "while the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975) (citation omitted). The Fifth Amendment thus provides an implicit guarantee of equal protection in federal laws, *Sessions v. Morales-Santana*, 582 U.S. 47, 52 n.1 (2017), and "prohibit[s] the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). The Supreme Court "treat[s] the equal

---

[8] A court may also order temporary detention of certain persons to permit revocation of conditional release, deportation, or exclusion. 18 U.S.C. § 3142(d).

protection obligations imposed by the Fifth and the Fourteenth Amendments as indistinguishable," *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995), and applies the same analysis to both. *Buckley v. Valeo,* 424 U.S. 1, 93 (1976); *Weinberger*, 420 U.S. at 638 n.2.[9]

In considering an equal protection challenge, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate [government] interest." *Cleburne*, 473 U.S. at 440. Congress "need not 'actually articulate . . . the purpose or rationale supporting its classification' . . . [and] has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (citation omitted). "The challenged law enjoys a 'presumption of validity,' and the challenging party 'must negate every conceivable justification for the classification in order to prove that the classification is wholly irrational.'" *LoPresti v. Johnson*, 2023 WL 6890732, at *3 (3d Cir. Oct. 19, 2023) (citation omitted); *Cabrera v. Att'y Gen. United States*, 921 F.3d 401, 404 (3d Cir. 2019) (same). Thus, "[i]n the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632 (1996).

"The general rule gives way, however, when a statute classifies by race, alienage, or national origin[,] . . . [or] impinge[s] on personal rights protected by the Constitution." *Cleburne*, 473 U.S. at 440. Such laws "are subjected to strict scrutiny and will be sustained only if they are suitably

---

[9] As such, just as the Fourteenth Amendment's equal protection clause does not outlaw "reasonable" classifications, neither does the Fifth Amendment's due process clause necessarily forbid social and economic legislation that contains arbitrary line-drawing. *See, e.g.*, *Marshall v. United States*, 414 U.S. 417 (1974) (excluding addicts with two or more felony convictions from consideration for rehabilitative program instead of incarceration did not deny equal protection or due process); *United States v. MacCollom*, 426 U.S. 317 (1976) (statute conditioning free transcript for indigent prisoners bringing a § 2255 motion on trial court's certification that the suit is not "frivolous" and "the transcript is needed to decide the issue" does not violate due process or equal protection).

tailored to serve a compelling state interest." *Id.*; *Plyler v. Doe*, 457 U.S. 202, 216–217 (1982) ("classifications that disadvantage a 'suspect class,' or that impinge upon the exercise of a 'fundamental right' . . . [must be] precisely tailored to serve a compelling governmental interest").

### D. Substantive Due Process

The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The guarantee of "due process of law" includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997) ("The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint."). This substantive due process "forbids the government to infringe certain 'fundamental' liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993); *accord Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017). "[W]here fundamental rights or interests are not implicated or infringed," a statute need only satisfy rational basis review to survive a substantive due process challenge. *Holland v. Rosen*, 895 F.3d 272, 293 (3d Cir. 2018).

"[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington*, 521 U.S. at 720–721 (citations omitted); *Steele*, 855 F.3d at 501 ("[s]ubstantive due process rights are founded . . . upon deeply rooted notions of fundamental personal interests derived from the Constitution" (citation omitted)); *see also Plyler*, 457 U.S. at 217 n.15 ("In determining whether a class-based denial of a particular right is deserving of strict scrutiny under the Equal

Protection Clause, [courts] look to the Constitution to see if the right infringed has its source, explicitly or implicitly, therein."). "Both the Supreme Court and [the Third Circuit] have repeatedly warned that [courts] cannot read these phrases too broadly to expand the concept of substantive due process, as 'guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended.'" *Holland*, 895 F.3d at 293 (citation omitted) ("A court 'is most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or design of the Constitution.'" (citation omitted)). Accordingly, a court's substantive due process "analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'" *Reno*, 507 U.S. at 302 (alteration in original) (citation omitted).

### III.    Discussion

To prevail on her equal protection claim, Afombe "must show that the 'Government has treated [her] differently from a *similarly* situated party *and* that the Government's explanation for the differing treatment does *not* satisfy the relevant level of scrutiny.'" *Cabrera*, 921 F.3d at 404 (citation omitted).

In simple terms, the constitutional guarantee of "equal protection of the laws" provides that if there is no rational distinction between two groups, the government must treat them the same. But "most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). The Constitution requires closer scrutiny only if the government's policy discriminates against a suspect class or infringes on a fundamental right. *Id.*

Here, because the challenged section of the Speedy Trial Act involves neither a fundamental right nor a suspect classification, rational basis is the proper standard of review. The Court further finds defendant has not met her burden and will deny the motion to dismiss.

**A. Section 3172 does not discriminate against a suspect class.**

The statute at issue here, 18 U.S.C. § 3172, does not discriminate against a protected class. Instead, it distinguishes between criminal defendants based on the severity of their conduct: those charged with felonies and class A misdemeanors, and those charged with other crimes. Defendant does not—and could not plausibly—argue either that criminal defendants generally, or those charged with petty offenses, constitute a suspect class. *See United States v. Green*, 165 F.3d 912 (4th Cir. 1998) (unpublished table decision) ("[T]he Act classifies defendants differently based on whether the charges against them are serious or petty. . . . The decision to treat differently those who have acted differently surely cannot be considered a suspect classification.").

**B. Section 3172 does not infringe a fundamental right.**

Defendant urges the Court to apply strict scrutiny because fundamental rights are involved. Specifically, her exclusion from the STA impinges on her fundamental personal freedoms because her restrictions under the BRA are not limited in time by the STA.[10] The argument is creative, but the Court is not persuaded.

As the Supreme Court has instructed, this Court's analysis must begin with a careful

---

[10] Defendant's argument might be stated in two parts: First, § 3172 violates equal protection by excluding certain defendants from the protections of the STA afforded to other criminal defendants, and second, by so doing, the statute infringes on the excluded defendants' fundamental protected freedoms (such as freedom of movement and association, and the right to be free from unreasonable searches and seizures). To the extent the latter argument is more appropriately considered as a substantive due process challenge rather than an equal protection claim, the Court's analysis converges to yield the same result. *Cf. United States v. Perry*, 788 F.2d 100, 117 (3rd Cir. 1986) (finding defendant's challenge to preventive detention provision of BRA was "more appropriately dealt with as a matter of substantive due process," where defendant's complaint was "with the congressional decision to deprive him of the opportunity to exercise the right [to be free from civil commitment] at all," "not some classification such as wealth or residence that stands as a barrier to its otherwise free exercise").

description of the asserted right. Defendant does not invoke her constitutional right to a speedy trial.[11] Nor does defendant challenge the constitutionality of her conditions of release as violating any protected liberty interest. Rather, defendant contends her personal freedoms surrendered under the BRA are recognized fundamental rights, and that it is "patently unreasonable to subject [her] to unlimited (in time) loss of her fundamental freedoms simply because the charging statutes in her case contain lesser maximum periods of incarceration that those brought against other defendants." [ECF 52] at 4. Thus, carefully described, defendant's asserted right might be phrased as a right to have pretrial release conditions imposed under the BRA limited in time by the provisions of the STA. Or, stated another way, the liberty interest is that of defendants charged with petty offenses to be free from pretrial release conditions imposed for an indefinite period of time.

Certainly there is a fundamental right to freedom from bodily restraint that is "deeply rooted in this Nation's history and tradition." *Washington*, 521 U.S. at 721; *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *Reno*, 507 U.S. at 316 (O'Connor, J., concurring) ("it is the State's affirmative act of restraining the individual's freedom to act on his own behalf . . . which is the 'deprivation of liberty' triggering the protections of the Due Process Clause"). That interest extends to "freedom 'from government custody, detention, or other forms of physical restraint' prior to any determination of guilt." *Steele*, 855 F.3d at 502 (citation omitted); *see Holland*, 895 F.3d at 297 ("Pretrial release and detention decisions implicate a liberty interest—conditional pretrial liberty—that is entitled to procedural due process protections."). But the liberty

---

[11] Defendant does not contend the STA's definition of offense impinges her constitutional speedy trial right, and the Court would find no basis for such an argument. Though the Act "'give[s] effect to the Sixth Amendment right to a speedy trial' by setting specified time limits . . . within which criminal trials must be commenced," *Brooks*, 697 F.2d at 520 (citation omitted), the Constitution exists independent of the Act, and the Act does not prohibit any defendant from asserting their Sixth Amendment rights.

interest in freedom from pretrial detention and conditions of release, though significant, is not unbounded.[12] The government has a legitimate and compelling interest in preventing crime and ensuring defendants appear for trial. *Salerno*, 481 U.S. at 749–50; *Holland*, 895 F.3d at 302. Thus, "the individual's strong interest in liberty . . . may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society." *Salerno*, 481 U.S. at 750–51 (due process clause does not preclude pretrial detention under BRA); *see also Holland*, 895 F.3d at 290 (describing bail as "a means of achieving pretrial release from custody conditioned on adequate assurances," and "a 'conditional privilege' that enables accused persons 'to stay out of jail until a trial has found them guilty'" (citation omitted)).

Moreover, these liberty interests are not at issue here because they are already protected under the BRA. As discussed above, the BRA favors release and sets forth procedural safeguards to protect against unreasonable restraints on defendants' liberty. *See* 18 U.S.C. § 3142; *Salerno*, 481 U.S. at 752 (rejecting facial challenge to BRA, citing "the legitimate and compelling regulatory purpose of the Act and the procedural protections it offers"). That process exists separately and independently from the provisions of the STA. The BRA further provides that defendants may move for modification of release and detention orders. 18 U.S.C. § 3142. Indeed, defendant did so

---

[12] *See Salerno*, 481 U.S. at 749 ("Even competent adults may face substantial liberty restrictions as a result of the operation of our criminal justice system . . . [and there is] well-established authority of the government, in special circumstances, to restrain individuals' liberty prior to or even without criminal trial and conviction."); *Holland*, 895 F.3d at 301–02 ("Once an individual has been arrested on probable cause for a dangerous offense that may require detention before trial, . . . his or her expectations of privacy and freedom from police scrutiny are reduced." (quoting *Maryland v. King*, 569 U.S. 435, 463 (2013))); *United States v. Sczubelek*, 402 F.3d 175, 184 (3d Cir. 2005) ("individuals on supervised release, like individuals on probation, 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *United States v. Knights*, 534 U.S. 112, 119 (2001))); *Carlson v. Landon,* 342 U.S. 524, 545–46 (1952) (the Eighth Amendment does "not prevent[] Congress from defining the classes of cases in which bail shall be allowed," and Congress may ban bail in entire classes of cases); *see also United States v. Scott*, 450 F.3d 863, 872 n.11 (9th Cir. 2006) ("[P]retrial releasees must suffer certain burdens that ordinary citizens do not, such as the requirement that they 'seek formal permission from the court . . . before . . . travel[ing] outside the jurisdiction.' These requirements . . . are unquestionably related to the government's special need to ensure that the defendant not abscond." (first alteration added) (citation omitted)).

here. *See* [ECF 32].[13] The BRA and STA do work together in some instances, but they also serve different purposes and confer different benefits. Neither creates a statutory or constitutional entitlement to the benefits of the other. Whether or not a certain charge falls within the STA's definition of offense, the STA does not prevent a defendant from challenging her pretrial detention or conditions of release under the BRA.[14]

In sum, criminal defendants have a conditional liberty interest in freedom from restraint pending a determination of guilt, and that interest is protected by the procedures set forth in the BRA. But excluding certain categories of offenses from the STA does not violate a defendant's right to liberty. Nor can the Court find, and defendant offers no authority to support, a fundamental constitutional right to have the time limitations of the STA apply to a defendant's conditions of release under the BRA. Such a right is neither historically rooted in the Constitution nor implicit in the concept of ordered liberty. *See Reno*, 507 U.S. at 303 ("The mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it; the alleged right certainly cannot be considered 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (citation omitted)); *Salerno*, 481 U.S. at 751 (pretrial detention under BRA does not

---

[13] Afombe remains on bond and has been since the commencement of this case. While she has likely experienced the anxiety and stress commonly present when facing criminal charges, she is subject to minimal restrictions and has not had to be physically present for any hearings since her initial appearance.

[14] The BRA does not set forth any limits on how long a defendant may be held in pretrial detention or subject to release conditions, but neither does the STA establish any hard deadlines—the many circumstances constituting excludable delay may operate to extend pretrial liberty restrictions for months or years beyond the presumptive time for trial. Afombe, citing the Supreme Court's decision in *Salerno*, contends "[o]ne of the purposes of the Speedy Trial Act is to limit the length of time a criminal defendant [] loses her personal freedoms pending the filing of charges and pending trial pursuant to the Bail Reform Act." [ECF 52] at 3. However, while "the *Salerno* Court imputed to Congress the desire to allow the [STA] to be an effective limitation to pretrial detention," the STA "was written long before the 1984 Bail Reform Act," and "was not intended to address the unique constitutional issues presented by the [BRA]." Tim J. Vanden Heuvel, *The Bail Reform Act of 1984 and Witness Coercion*, 25 Cal. W. L. Rev. 149, 165 (1989). Further, while one purpose of the STA is "to 'give effect to the Sixth Amendment right to a speedy trial' by setting specified time limits [minus any excludable delay] . . . within which criminal trials must be commenced," *Brooks*, 697 F.2d at 520, the Act does not create a constitutional entitlement to these statutory time provisions. Thus, the STA does not guarantee a maximum length of pretrial detention, and § 3172 does not prevent any defendant from challenging the type or duration of his conditions—he must simply move for modification under the BRA.

offend fundamental principle of justice).

Accordingly, because § 3172 neither discriminates against a protected class nor implicates a fundamental right, rational basis review is the appropriate standard. *See Green*, 165 F.3d 912 (applying rational basis review to defendant's equal protection challenge to § 3172).

### C. Section 3172 survives rational basis review.

Where "a law neither burdens a fundamental right nor targets a suspect class, [the Court] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631. Accordingly, the Court must ask whether there is a rational relationship between the exclusion of certain classes of offenses from the STA and some legitimate governmental purpose. The Court is "not to 'pronounc[e]' this classification 'unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators." *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012) (alteration in original) (citation omitted). Defendant here has not met her heavy burden to rebut the presumption of validity and negate every conceivable justification for the government's differential treatment of defendants charged with different classes of offenses. *See id.*; *Cabrera*, 921 F.3d at 404 ("The threshold for upholding distinctions in a statute under rational-basis review is extremely low . . . ." (citation omitted)); *Heller*, 509 U.S. at 319 ("rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices'" (citation omitted)).

The Act's legislative history conveys Congress's expansive purpose of "giv[ing] real meaning to th[e] Sixth Amendment right" to a speedy trial. H.R. Rep. No. 93-1508, at 7404 (1974). Congress was concerned not only with the detrimental effects of trial delays on defendants, but also

with the benefits of speedy trial to society.[15] The House Judiciary Committee pointed to crime and recidivism data as illustrating the need for both speedy trials and expanded pretrial services, and noted "faster and efficient criminal processing would increase the deterrent effect of the criminal law, ease the task of rehabilitation of offenders and reduce crime." *Id.* at 7409; *see* Vanden Heuvel, *supra* note 14, at 165 (the Act "was designed mainly to 'assist in reducing crime and the danger of recidivism by requiring speedy trials and strengthening of supervision over persons released pending trial'" (citation omitted)). Thus, the Act "was passed to help reduce crime and recidivism by reducing the delay in bringing criminals to justice[, and] 'was intended to clarify the rights of defendants and to ensure that criminals are brought to justice promptly.'" *United States v. Fox*, 788 F.2d 905, 909 (2d Cir. 1986) (citations omitted); *see* H.R. Rep. No. 96-390, at 807 (1979) (STA "both gave effect to a federal defendant's right to speedy trial under the Sixth Amendment and acknowledged the danger to society represented by accused persons on bail for prolonged periods of time"). As such, "[t]he Act, unlike the Sixth Amendment right to a speedy trial, is not purely a means for protecting defendants; it is intended to move the criminal justice system along for the

---

[15] The House Judiciary Committee wrote:

> The Committee believes that the right to a speedy trial belongs not only to the defendant, but to society as well. A defendant who is charged with a violation of the law becomes a burden to society in the sense that his status consumes the time and energy of all components of the criminal justice system with which he comes in contact: the police, magistrate, clerks of court, probation officers, judges and others.
>
> This creates a financial as well as an administrative burden on the taxpayer. When a defendant is detained pending trial, the taxpayer must bear the burden of sustaining him for an indefinite length of time. Most significantly, the defendant may be a danger to the community in which he resides. In the Federal system, although no exact national data is presently available, it is estimated that three-quarters of all defendants are released awaiting trial. This means that persons who are likely to commit additional crimes could without adequate supervision and assistance continue to reap the profits of criminal activity at the expense of the public.

H.R. Rep. No. 93-1508, at 7408–09.

benefit of everyone involved—including the public." *United States v. Hoslett*, 998 F.2d 648, 660 (9th Cir. 1993).

Additionally, Congress made a deliberate choice to exclude certain categories of offenses from the STA: "The Report of the Senate Judiciary Committee on the original Act recognized, 'The term "offense" is defined in such a manner as to exclude defendants charged with petty offenses from the speedy trial provisions.'" *United States v. Nickerson*, 731 F.3d 1009, 1014 (9th Cir. 2013) (citation omitted).[16] In construing the STA, this Court's "task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993) (citation omitted); *see United States v. Sued-Jimenez*, 275 F.3d 1, 8–9 (1st Cir. 2001) (concluding "appellant's policy-based argument that the Speedy Trial Act *should* apply to her [class B misdemeanor] case, despite the clear language of the Act, must fail because it is directly contrary to the Act's provisions"); *Nickerson*, 731 F.3d at 1014 (rejecting argument that § 3161(d)(2) expands the category of offenses to which the Act applies, stating: "There is no suggestion in the legislative history that Congress intended *some* provisions of the Act to apply to petty offenses or Class B misdemeanors.").

The Court finds that excluding class B and C misdemeanors and infractions from the STA definition of "offense" is rationally related to a legitimate government purpose. Courts and prosecutors have limited resources, and it is both rational and prudent to focus those resources on swiftly bringing to trial the most serious cases. *See Green*, 165 F.3d 912 ("Congress has a legitimate

---

[16] As the Ninth Circuit observed, § 3172(2) "has remained substantively the same since [the STA] was originally enacted, although it originally referred to Class B and C misdemeanors and infractions using the term 'petty offense' . . . [which] was defined as, 'Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500.'" *Nickerson*, 731 F.3d at 1014, n.2 (citation omitted).

interest in ensuring the efficient operation of the federal courts and preserving federal resources for more serious civil and criminal matters.")[17,18] Congress also has a legitimate interest in protecting the community from further harm. It could therefore rationally conclude that defendants charged with felony offenses are more likely to reoffend while on release and thus prioritize those cases for expedient resolution to prevent recidivism. *See* 18 U.S.C. § 3164 (prioritizing for disposition cases where the released person has been designated by the government as "high risk"); *Salerno*, 481 U.S. at 747, 749 ("There is no doubt that preventing danger to the community is a legitimate regulatory goal. . . . The government's interest in preventing crime by arrestees is both legitimate and compelling."). Additionally, class A misdemeanor and felony offenses are more likely to be of public interest than petty offenses,[19] and therefore of the type Congress wants to ensure swift justice for. So, too, does Congress have a legitimate interest in preventing prolonged pretrial detention, and it could reasonably assume that defendants charged with petty offenses are less likely to be detained pending trial and more likely to be released with minimally restrictive conditions.[20]

---

[17] *See also Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 82 (1988) (recognizing the conservation of judicial resources as a legitimate government interest); *United States v. Ayala-Bello*, 995 F.3d 710, 716 (9th Cir.) (recognizing the government's "legitimate interest in managing its prosecutorial resources," and describing the "[b]alancing [of] costs and consequences" as "the hallmark of prosecutorial discretion, a constitutional power that lies at the core of the executive branch"), *cert. denied*, 142 S. Ct. 513 (2021); Hon. Robert B. Collings, *Congress Grants U.S. Magistrate Judges Additional Judicial Powers*, 48 Fed. Law. 40, 41 (July 2001) (observing that historically, "a fair number [of defendants charged with petty offenses] have exercised their right to have a district judge hear their cases, placing an added burden on district judges, who have substantial numbers of felony cases to dispose of within the strictures of the Speedy Trial Act," and finding "[t]he fact that magistrate judges can now hear these cases without consent [under new provision of the Federal Courts Improvement Act of 2000] will eliminate this burden").

[18] Petty offenses, such as defendant's illegal entry offense here, demand less resources and can generally be resolved faster and easier than more serious felony offenses.

[19] Petty offenses "usually involve criminal activity on government property, such as national parks, military bases, or government buildings; minor crimes, such as obstruction of the mails; simple assault on government property; illegal entry into the United States; and unauthorized wearing of an Armed Services uniform." Collings, *supra* note 17, at 41.

[20] The Act's legislative history evidences Congress's concern with the greater liberty restrictions imposed on defendants detained pretrial. *See* 120 Cong. Rec. 41618 (1974) (statement of Sen. Ervin) (describing STA as expressing Congress's concern with both crime control and "elementary justice," and referring particularly to defendants held in jail before trial). The legislation reflects this concern by specifically prioritizing for disposition cases of detained persons. 18 U.S.C. § 3164; *cf. United States v. Marion*, 404 U.S. 307, 320 (1971) ("undue and oppressive incarceration prior to

Accordingly, the Court finds that § 3172 is reasonably tailored to serve Congress's legitimate objectives of conserving judicial resources, ensuring community safety, preventing recidivism, and protecting defendants' rights.[21]

In sum, the Act's legislative history reflects a broad congressional purpose "to move the criminal justice system along for the benefit of everyone involved." *Hoslett*, 998 F.2d at 660. In balancing defendants' rights and the interests of the public with fiscal constraints and administrative concerns, Congress reasonably drew a line between class A misdemeanors/felony offenses and other crimes. To paraphrase the Third Circuit, "[i]t was undoubtedly rational for Congress to select for special concern some but not all of the [classes of offenses], and single those out for the [STA] safeguard." *Perry*, 788 F.2d at 116; *see also Plyler*, 457 U.S. at 216 ("The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." (citation omitted)). The Court therefore finds § 3172 satisfies rational basis review.

## IV. Conclusion

"It is a basic tenet of constitutional law that Congressional statutes are presumptively constitutional and should not be struck down unless 'clearly demonstrated' otherwise." *Nat'l Collegiate Athletic Ass'n v. Christie*, 926 F. Supp. 2d 551, 557 (D.N.J.) (citations omitted), *aff'd*, 730 F.3d 208 (3d Cir. 2013). As the Supreme Court has observed, the constitutional "promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity

---

trial" is one of the "major evils" the Sixth Amendment speedy trial clause protects against).

[21] Accepting Afombe's argument would result in extending the STA to all categories of offenses, whether the crime charged is murder or a parks violation notice. Such a result is neither compelled by the Constitution nor consistent with this country's history of treating different classes of offenses differently. For example, there are certain offenses for which pretrial release is presumptively unavailable under the BRA. 18 U.S.C. § 3142(e). The Sixth Amendment right to a jury trial excludes petty offenses. *Lewis*, 518 U.S. at 325; *see Blanton v. City of North Las Vegas*, 489 U.S. 538, 542–43 (1989) (while "a prison term of six months or less . . . will seldom be viewed by the defendant as 'trivial or petty,' . . . the disadvantages of such a sentence, 'onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications'" (citation omitted)). Likewise, defendants charged with petty offenses have no right to have a district judge hear their case. 18 U.S.C. § 3401(b).

that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer*, 517 U.S. at 631. Where, as here, the challenged statute does not discriminate against a suspect class or infringe a fundamental right, the Court is compelled to accept Congress's rational choice "even [if] there is an imperfect fit between means and ends." *Heller*, 509 U.S. at 321 ("A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." (internal quotations and citations omitted)). For the reasons set forth above, the Court finds § 3172 satisfies rational basis review because the classification at issue is rationally related to furthering Congress's legitimate interests. The Court thus declines defendant's invitation to declare § 3172 unconstitutional.[22]

Accordingly, the premises considered, it is hereby ORDERED that the defendant's Motion to Dismiss [ECF 51] is DENIED.

**Dated:** November 15, 2023                  S\_____
                                                                    **RUTH MILLER**
                                                                    United States Magistrate Judge

---

[22] Because the Speedy Trial Act does not apply to defendant's case, the Court does not reach defendant's other arguments regarding timeliness of the information and dismissal under the Act.